OPINION
{¶ 1} In Stark App. No. 2008CA00149, Appellant Judeleena Wenning ("Mother") appeals the June 16, 2008 Judgment Entry, and June 16, 2008 Findings of Fact and Conclusions of Law entered by the Stark County Court of Common Pleas, Family Court Division, which terminated her parental rights, responsibilities and obligations with respect to her four minor children, and granted permanent custody of the children to Appellee Stark County Department of Job and Family Services ("the Department"). In Stark App. No. 2008CA00153, Appellant Timothy Wenning ("Father") appeals the same with respect to the termination of his parental rights, responsibilities and obligations.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Mother is the biological mother of Stephanie Nicholas (DOB 11/3/93), Timothy Wenning, Jr. (DOB 6/10/96), Michael Nicholas (DOB 3/7/98), and Christopher Wenning (DOB 2/10/03). Father is the biological father of Stephanie, Michael, and Christopher.[1] Parents are married and living together.
 {¶ 3} On April 25, 2007, the Department filed a Complaint alleging the Nicholas/Wenning children to be dependent and/or neglected. The Department filed the Complaint after receiving a referral the previous day that members of the Canton Fire Department had entered the family's residence in connection with a fire which had occurred in the apartment below, and found such to be in deplorable condition. A case worker visited the residence and likewise found the apartment to be in deplorable condition. The case worker observed exposed piping, overturned furniture, and *Page 3 
clothing, food and miscellaneous debris strewn throughout the entire home. The kitchen and bathroom sinks were overflowing with garbage. The kitchen countertops were piled with garbage, food, and spoiled milk. The rooms were so cluttered with clothing, diapers, toys and garbage the doorways were inaccessible. The caseworker interviewed the three oldest children, all of whom disclosed domestic violence between Mother and Father. Mother and Father denied any such behavior. Parents and all four children were physically dirty. The children had chronic head lice, including live louse bugs. When she arrived at the home, the caseworker found four-year-old Christopher in a soiled, soaked diaper and wrapped in a filthy sleeping bag. The child was nonverbal.
 {¶ 4} The Department also learned from school officials the ten-year-old child washes up at school everyday because he is so dirty the other children make fun of him. School officials also reported problems with school attendance. The family had a history of chronic homelessness. Mother and Father had previous involvements with the Department when they were children. There was an outstanding warrant for Mother's arrest at the time of the filing of the Complaint.
 {¶ 5} The trial court placed the children in the temporary custody of the Department following an emergency shelter care hearing on April 26, 2007. The Department filed its first Amended Complaint on May 16, 2007, adding an allegation of abuse. At the adjudicatory hearing conducted on May 21, 2007, Mother and Father stipulated to a finding of neglect. The trial court approved and adopted the case plans. Mother's case plan required her to complete a parenting evaluation and follow all recommendations; establish stable and appropriate housing for a period of no less than six months to one year; maintain stable employment; and attend Goodwill Parenting. *Page 4 
Father's case plan required him to attend and complete Goodwill Parenting; maintain stable housing for a period of at least six months; and complete a parenting evaluation and follow all recommendations. On August 2, 2007, after the children disclosed incidents of sexual and physical abuse during their psychological evaluations, the trial court suspended Parents' visitation.
 {¶ 6} The Department filed a Motion for Permanent Custody on March 21, 2008. The matter proceeded to hearing on May 20, 2008. Anita Young, the ongoing family service worker assigned to the Nicholas/Wenning children, testified the initial and primary concern which resulted in the Department's involvement was the deplorable conditions of the home. The Department also had concerns regarding the children's school attendance. Young stated additional concerns arose as the case proceeded. The children disclosed sexual abuse perpetrated on them by Father. Additionally, four-year-old Christopher could not walk or talk and was still wearing diapers when the Department initially became involved. The child was later diagnosed with failure to thrive.
 {¶ 7} Young detailed the requirements of the case plan. The recommendations made as a result of Mother's parenting evaluation included her participation in a parenting education program; participation in domestic violence counseling through the Renew Program; seeking employment to show she can independently care for the children in the event the domestic violence issues could not be resolved; maintain appropriate housing and follow up with parenting mentors if the children were returned to the home. The recommendations for Father following his parenting evaluation included marital therapy; participation in a parenting education program; and the *Page 5 
maintenance of appropriate and stable housing. Parents were required to attend Goodwill Parenting, which they did. However, they were unsuccessful. Father and Mother were non-compliant and did not successfully complete the program. As a result, Parents attended Goodwill Parenting a second time with Mother receiving a certificate of attendance and Father being terminated from the program. Mother's participation with Renew was sporadic, and although she completed the program, her therapist did not believe Mother received any benefit therefrom. During the course of the proceedings, Parents lived for a short time with one of Father's relatives. They established their own apartment in either July, or August, 2007, but were evicted in January, 2008. Parents moved into another home, in which they were residing at the time of the hearing, and had been at that residence since approximately January, 2008. Young expressed concerns about Parents' ability to maintain housing for a long term period. Young noted gas service to the latest home had been cut off on May 12, 2008.
 {¶ 8} Young stated Parents had their last visit with the children on July 27, 2007. On August 1, 2007, the Department filed a motion requesting visitation be terminated or suspended due to the children's disclosures of sexual abuse. Visitation had never been reinstated. Young stated neither Father nor Mother had successfully completed the case plan. Young described her efforts to develop a relationship with Mother and Father, her attempts to stay in contact with them through face to face visits, telephone calls, and written correspondence, her encouraging them to participate in the children's therapy, and providing Mother with information regarding potential employment for her. Young explained, whenever she asked Parents if there was anything she could do to help or how they were doing, Parents always responded there were no problems and *Page 6 
they did not need any help. Young concluded she did not believe the children could be sent home that day or within a reasonable period of time. On cross-examination, Young acknowledged the condition of Parents' current home was appropriate, but noted parents did not have sufficient furniture for the children.
 {¶ 9} Casey Hornbeck, a psychologist at Community Services of Stark County, testified she initially saw Timothy, Jr. and Michael for mental health assessments when she was employed at Northeast Ohio Behavioral Health. Hornbeck continued to see the boys for individual counseling as their ongoing therapist. Hornbeck diagnosed both boys with adjustment disorder with mixed mood and conduct. Such diagnosis means the boys were having a difficult time adjusting to negative past experiences and such was impacting their feelings or moods as well as their behavior and conduct. Hornbeck utilizes trauma focused cognitive behavioral therapy. When asked what past traumatic event the boys had experienced, Hornbeck replied Timothy, Jr. and Michael both reported witnessing significant domestic violence between Parents as well as being physically abused themselves. The boys also reported sexual abuse perpetrated on them by both Mother and Father, and reported having witnessed sexual abuse of their siblings. The boys further told Hornbeck they were frequently hungry and did not have enough food to eat. Both Timothy, Jr. and Michael admitted stealing food from stores in order to have something to eat. Hornbeck stated the boys spoke of these issues repeatedly. Hornbeck met with Mother and Father to discuss the reasons why the children had been removed from their care. Hornbeck addressed the children's disclosures of domestic violence, physical and sexual abuse, and hunger and hygiene. Parents denied such things occurred. Because of Parents' denial and Parents' labeling *Page 7 
the boys as liars, Hornbeck submitted a letter to the Department stating her belief it was in the children's best interest not to have visitation with Parents. Parents never acknowledged any wrong doing or accepted responsibility for the events which led to the removal of the children.
 {¶ 10} On cross-examination, Hornbeck stated the children had made the disclosures during the early parts of the assessment period. Hornbeck sent a letter to Parents requesting they participate in the evaluation, and asked them to call to make an appointment. Parents did not contact Hornbeck, and she did not meet with them until several months later.
 {¶ 11} Carrie Schnirring, a psychology assistant with Northeast Ohio Behavioral Health, testified she conducted the psychological evaluation of Stephanie and is her ongoing therapist. She had recently began counseling Christopher, the youngest child. As a result of Stephanie's evaluation, Schnirring diagnosed the girl with adjustment disorder with anxiety. The therapist noted behaviors in Stephanie which were reminiscent of a reactive detachment disorder. Her treatment goals for Stephanie were to teach her stress management techniques to decrease anxiety, and to seek adults as helpers in times of need. Stephanie described a significant amount of domestic violence between Parents and physical abuse against her and her siblings by Parents. Schnirring noted Stephanie made repeated, specific disclosures, which started during the initial evaluation.
 {¶ 12} Schnirring met with Parents in January, 2008, in an attempt to educate them regarding their daughter's anxiety and the unusualness of her behaviors. Although Schnirring gave Parents an opportunity to talk about where Stephanie's *Page 8 
anxiety might be coming from, Parents minimized it and chalked it up to Stephanie being a shy child. Schnirring told parents she believed Stephanie's anxiety stemmed from the domestic violence she had witnessed and experienced. Parents denied such events occurring in the home. The results of Stephanie's assessment indicated she has a tremendous amount of fear and worry. When Schnirring asked Stephanie to describe herself, she often characterized herself as "embarrassed". Schnirring explained when a child grows up in a home in which his/her basic needs are not met, the child learns adults are not loving caregivers, and learns seeking assistance from an adult can result in harm or punishment. Schnirring sensed Stephanie made a decision after years of experience that approaching an adult for help, or discussing her thoughts and feelings with an adult, was just not worth it. Stephanie is gradually feeling more comfortable seeking assistance from her foster parents. Schnirring noted with continued positive relationships with her foster parents, Stephanie would continue to progress in this area.
 {¶ 13} Schnirring discussed her work with Christopher, noting she had only seen the boy on two occasions. Her provisional diagnosis was disruptive behavior disorder, but she could not positively state from where such behavior was coming. During her most recent visit with Christopher, the child made a random comment about Mother and Father punching him on his birthday. Schnirring explained the boy has a speech impairment with which she is not completely familiar and was unable to solicit further details from him.
 {¶ 14} Anita Young testified during the best interest portion of the hearing. She stated there are four children: Stepanie Nicholas, 14; Timothy Wenning, Jr., 11; Michael Nicholas, 10; and Christopher Wenning, 5. The children are Caucasian. Michael and *Page 9 
Stephanie both have developmental problems. Christopher just completed an IEP through which it was determined he is cognitively developing at a normal rate. Although there were concerns about Timothy, Jr. in the beginning, the boy was doing excellent in school. Stephanie and Michael attend special classes. Stephanie is doing well, however, Michael is struggling. Stephanie and Christopher are placed together with one foster family, and Michael and Timothy are together with another family. Young was unable to answer with any certainty whether the foster families were interested in adopting the children. Placement with relatives was either unavailable or inappropriate. Young expressed her belief it was in the children's best interest to grant permanent custody to the Department. She explained the Department's goal is to establish permanency in the children's lives so the children will feel safe and taken care of.
 {¶ 15} The guardian ad litem filed a written Report and Recommendation, in which she detailed the "remarkable" progress the children have made since their removal from Parents' home. She recommended permanent custody of the children be given to the Department.
 {¶ 16} Via Judgment Entry dated June 16, 2008, the trial court terminated Parents' parental rights, privileges and obligations, and granted permanent custody of the children to the Department. The trial court issued Findings of Fact and Conclusions of Law on the same day.
 {¶ 17} It is from the June 16, 2008 Judgment Entry, and Findings of Fact, Mother appeals, raising as error: *Page 10 
 {¶ 18} "I. THE TRIAL COURT ERRED IN FINDING THAT THE BEST INTERESTS OF THE CHILDREN WOULD BE SERVED BY GRANTING PERMANENT CUSTODY TO THE DEPARTMENT OF JOB AND FAMILY SERVICES.
 {¶ 19} "II. THE TRIAL COURT ERRED IN FINDING THAT THE CHILDREN COULD NOT BE RETURNED IN A REASONABLE PERIOD OF TIME PURSUANT TO O.R.C. 2151.414(E)(1)."
 {¶ 20} Father appeals the same, arguing:
 {¶ 21} "I. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 22} "II. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 {¶ 23} This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.1(C).
 Mother I, II; Father I, II {¶ 24} Because Mother and Father's assignments of error require similar analysis, we shall address said assignments of error together. In Father's first assignment of error and Mother's second assignment of error, Mother and Father maintain the trial court's finding the children cannot or should not be placed with them was against the manifest weight of the evidence. In Father's second assignment of error *Page 11 
and Mother's first assignment of error, Mother and Father assert the trial court's finding it would be in the best interest of the children to grant permanent custody to the Department was against the manifest weight and sufficiency of the evidence.
 {¶ 25} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279,376 N.E.2d 578.
 {¶ 26} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 27} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody *Page 12 
of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 28} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.
 {¶ 29} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.
 {¶ 30} If the child is not abandoned or orphaned, then the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that *Page 13 
one or more of the factors enumerated in R .C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.
 {¶ 31} Both Mother and Father argue they each complied with their individual case plans; therefore, the Department did not prove the children could not or should not be returned to their custody. Mother specifically asserts the only reason the children were removed was the poor condition of their home. In support of her contention the trial court's finding was against the manifest weight of the evidence, she refers to the cross-examination of Anita Young, during which the case worker stated their current residence was appropriate. Although Young did testify as such, she expressed other reasons which support the trial court's finding.
 {¶ 32} As set forth in our Statement of the Facts and Case, the children were initially removed after the Department received a referral due to the deplorable home conditions. The Department filed a Complaint alleging dependency and neglect based not only on the home conditions, but also on the children's poor school attendance, the health and welfare of the youngest child, and the family's chronic homelessness. The Department subsequently amended the Complaint to allege abuse as the youngest child had been diagnosed with failure to thrive, and the children had disclosed domestic violence between Mother and Father.
 {¶ 33} The case plan required Parents to maintain appropriate housing. During the course of the proceedings, Parents lived with relatives for a short time, moved into an apartment and lived there for approximately 5 months before being evicted, and, at the time of the hearing, had been living in their current residence for approximately 5 months and at least one utility had been shut off. Mother's case plan required her to *Page 14 
undergo a parenting evaluation and follow all recommendations. As a result of the evaluation, the Department added parenting classes and Renew counseling for domestic violence issues. Mother and Father attended Goodwill Parenting for two sessions. Parents failed to complete the first session. Mother completed the second session with only a certificate of attendance, the lowest level a parent can receive. Father was terminated from the second session. Mother completed Renew, but was so sporadic in her participation, the therapist did not believe she benefited from it. Mother and Father did not demonstrate an ability to effectively parent. They were unable to assimilate and apply the information provided to them. Mother and Father denied the children's allegations of domestic violence, and physical and sexual abuse, and repeatedly stated the children were lying. Parents also were not cooperative with the children's counselors, failing to meet with them for several months. Parents minimized the children's issues.
 {¶ 34} During the best interest portion of the hearing, Anita Young testified all four children are Caucasian, and three of the four have some degree of developmental problems. Those children have IEPs. The foster parents for Stephanie and Christopher may consider adoption. The foster parents for Michael and Timothy were unsure if they would adopt the boys. According to Attorney Melissa Pitinii, the guardian ad litem, the children have made remarkable progress in their foster placements. The children have started to interact with the guardian, and make eye contact with her. Christopher is running, talking, and laughing, and is potty-trained.
 {¶ 35} Based upon the foregoing and the entire record in this matter, we find the trial court's findings the children could not or should not be placed with Mother and *Page 15 
Father within a reasonable time, and it was in the best interest of the children to grant permanent custody to the Department are supported by clear and convincing evidence.
 {¶ 36} Mother's first and second assignments of error are overruled. Father's first and second assignments of error are overruled.
 {¶ 37} The judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.
 By: Hoffman, P.J., Wise, J. and Edwards, J. concur *Page 16 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. Costs to Appellant.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. Costs to Appellant.
[1] The alleged father of Timothy, Jr. was served by publication, but was not present at any of the hearings and is not a party to this appeal. *Page 1